Argued March 29, affirmed May 31; petition for rehearing denied
June 27, 1950

## SCHOOL DISTRICT NO. 9 *v.* MAXWELL ET UX.

219 P. (2d) 155
220 P. (2d)   95

*H. T. Botts,* of Tillamook, argued the cause and filed briefs for appellants.

*George P. Winslow,* of Tillamook, argued the cause and filed a brief for respondent-cross appellant.

Before Lusk, Chief Justice, and Brand, Belt, Bailey and Latourette, Justices.

BELT, J.

This is a proceeding, tried in equity, to determine the ownership and right to possession of a school bus stipulated to have been owned by School District No. 1 of Tillamook county prior to May 8, 1948, at which time the latter District and the plaintiff School District voted for consolidation. There is no question about the validity of the consolidation proceedings. The majority vote in both districts was in favor of consolidation. On May 14, 1948, the District Boundary Board of Tillamook county entered its order of consolidation.

The plaintiff claims to be owner of the bus by virtue of the consolidation of the districts. The defendants allege that prior to the date of the consolidation election, School District No. 1—a third class district— through its board of directors sold the bus to the de-

fendant, Merrill Maxwell. The plaintiff—a first class district—challenges the validity of this alleged sale to Maxwell on various grounds, some of which will be later considered.

The circuit court found that the purported sale of the school bus by School District No. 1 to the defendant, Merrill Maxwell, was null and void and decreed that the plaintiff, School District No. 9, is the owner of the bus and entitled to its immediate possession, fixing its value in the sum of $3,250.00. It was further decreed that the defendant, Merrill Maxwell, was entitled to a return of the warrants delivered by him to School District No. 1 and accepted by it as payment for the bus. From this decree the defendants have appealed, and the plaintiff School District has filed a cross-appeal based on the failure of the court to award damages for the wrongful detention of the bus.

The defendants, Merrill Maxwell and Marjorie Maxwell, husband and wife—the latter being clerk of School District No. 1—assert that on the morning of the day of the consolidation election—the election being held in the afternoon—School District No. 1 sold the bus to the defendant, Merrill Maxwell, and accepted as payment therefor two of its outstanding interest-bearing warrants aggregating $2,000.00, which the defendants purchased from Miss Myrtle Mills, giving their promissory note therefor.

The board of directors of School District No. 1 had a meeting on the 24th day of April, 1948, and the District Clerk's Record Book discloses the following entry of Minutes: "Possible ways to liquidate liabilities of School District #1 were sought, *in case of a favorable consolidation vote,* May 8; since this was not taken care of in the consolidation petition."

(Italics ours.) Another special district school meeting was called on the following day, April 25 at 8:30 p. m. In this meeting—held on Sunday—the board of directors directed the clerk to call a special meeting on May 6 to authorize the school board to sell its school bus "and to use proceeds to apply on the Negotiable Interest-Bearing Indebtedness of the District." Notices of such meeting and the purpose thereof were posted. A special school meeting was held on May 6, and it was voted to authorize the sale of the school bus and to apply the proceeds of the sale in satisfaction of warrant indebtedness. It appears from the Minutes of the Clerk's Record Book that at this special board meeting of District No. 1,

> "A motion was made, seconded, and carried, to accept the offer of Merrill Maxwell to purchase the bus, and to reject all others. *At the Board's request,* he will purchase $2000.00 Negotiable Interest Bearing Warrants from Myrtle Mills, and give the same in payment for the bus. This will reduce $2000.00 of the warrant Indebtedness against the district. The Chairman asked the School Board and Merrill Maxwell to meet at Robert Thornton's office, Sat. morning, May 8, 1948, at 11 a.m. to sign the papers, and make final arrangements with Tillamook County Treasurer, and transfer of bus insurance." (Italics ours.)

In accordance with the above request, the board of directors and the clerk met in Mr. Thornton's law office for the purpose of consummating the alleged sale of the bus to Maxwell. A bill of sale was executed and delivered to Maxwell purporting to transfer the title of the bus to him for a consideration of $2,000.00. As a matter of fact, no consideration was received by the District at this time. No money was paid and the bonds were still in the possession of the holder, Miss Myrtle

Mills, although a note dated May 8, 1948, signed by the defendants, had been executed by defendants. On Monday, May 10, 1948, after the consolidation election, the bonds were delivered by Miss Mills to the School District and on such date were turned in to the treasurer of Tillamook county. The county treasurer, on a receipt signed by Myrtle O. Mills, noted: "These bonds were paid to S.D. #1 in payment of school bus purchased by Myrtle Mills," signed "Marguerite Stasek, Co. Treas." To add to the confusion, we also observe the following notation dated May 8, 1948: "Regarding Bonds #6 and #7, no funds changed hands; Myrtle Mills took over possession of the school bus in payment of the above named bonds or time warrants," signed "Marguerite Stasek County Treasurer." It has never been claimed that Myrtle Mills was buying the school bus. She was selling the bonds of the District. We are at a loss to know why the above notations were made by the county treasurer, but we impute no ulterior motives on her part.

We think it is clear from the evidence—indeed, it is conceded by the defendants—that the purpose of selling the bus to the defendant Maxwell was to deprive School District No. 9 of such asset in the event of consolidation of the districts. Maxwell had no use for the bus, and it was sold at a price which was about 60 per cent of its value. Ten months prior to this alleged sale, the District had paid approximately $3,900.00 for the bus. There is considerable doubt as to whether this transaction was in fact an absolute sale or whether the defendant Maxwell was merely acting as an agent for School District No. 1. If the vote had been against consolidation, would the sale have been completed? In such an event, how would School District No. 1 have trans-

ported the children to and from school? If the defendant Maxwell, after having purchased the bus, had sold it on the following day for $3,000.00, would the profit have gone to him or would it have been applied in retirement of other warrant indebtedness?

■ Assuming that there was an absolute sale of the bus or that the defendant Maxwell was holding title thereto in trust for the School District, we are convinced that the validity of the transaction can not be sustained. The motive of the school board of District No. 1 in undertaking to liquidate the indebtedness of the District was to relieve the taxpayers of that District of a burden in the event of consolidation. Nevertheless, what they did resulted in a fraud on School District No. 9, which, in the event of consolidation, was obliged to provide educational facilities and transportation for the children of School District No. 1. Had the legal voters in School District No. 9 known that the assets of School District No. 1 had been thus depleted, the vote for consolidation might not have been favorable.

The board of directors of School District No. 1 were opposed to consolidation. It was alleged in the complaint of the plaintiff and admitted by the defendants in their answer:

> "That the defendants, and each of them, took an active part in all of said proceedings for the disposal of said school bus by said School District No. 1, attended all board meetings of said School District No. 1, and actively advised and urged said School District No. 1 to dispose of said school bus before the date set for said consolidation election, in the manner hereinbefore set forth."

Otto Schild, a member of the board of School Dis-

trict No. 1, testified as follows in reference to the sale of the bus:

"Q  Was that going to be your program?

"A  That was one reason why we wasn't in haste in selling to a disinterested party,—if we could find someone in the district which had the interest of the district at heart, then we thought we could go ahead and sell this bus and they would consider our interests as well as we, as directors, would consider ours.

"   *   *   *

"Q  You felt certain you had to complete this sale before the votes were counted on the 8th, didn't you?

"A  Yes, that is right, in order to make it legal.

"Q  Isn't it a fact that there was an understanding and agreement between the Board and Mr. Maxwell and his wife that the bus, if they got more for the bus, you would use the funds for retiring some more warrants?

"A  We talked about that, and at the time of the sale of the bus, we sold the bus to Mr. Maxwell, and he was very positive he could do with it as he pleased.

"Q  You didn't expect him to go down and sell it for $3500 and keep the money, did you?

"A  That is what I said before, we wanted a buyer who would feel interested in the district more than himself.

"Q  If he had walked down the street and sold it for $3500 wouldn't the Board feel that he should have paid that on some more warrants?

"A  That is possible, under the circumstances, I wouldn't guarantee how much would be left of that. After all, there were costs, the selling of the bus, we didn't feel or expect to hold him to a strict accounting or anything of that nature intentionally or otherwise."

■■ On consolidation of the districts the property of School District No. 1 became the property of the consolidated district and was subject thereafter to the control of said district school board of the consolidated district. § 111-836, O. C. L. A. The above section was amended by ch. 27, Or. Laws, 1941, by adding the following provision:

> "* * * provided, that when all of the districts vote affirmatively on the question, at the same time as the vote on consolidation, an apportionment of assets and liabilities may be made as is provided for consolidated union high school districts in section 111-3149, O. C. L. A."

It would appear from the above amendment that there was some other question to be voted on other than that of consolidation, but we know not what it could have been. It was not until 1949—which was after the consolidation election in question—that the legislature by ch. 133, Or. Laws 1949, provided that the legal voters in the original petitions for consolidation could also petition "for a sharing of outstanding indebtedness," and that the "sharing of indebtedness" could be voted on at the same election. Notwithstanding this amendment of 1949, the legislature had already provided in ch. 27, Or. Laws, 1941, for the apportionment of assets and liabilities on consolidation of the districts. It is quite plain that the school board of School District No. 1 deliberately planned to circumvent this statute. That the legislature has plenary power to provide for the apportionment of assets and liabilities of school districts upon consolidation is well settled. 47 Am. Jur., Schools, 313, § 22; 121 A. L. R. 826.

■■ The consolidation of the districts was not consummated until the order of consolidation was entered

on May 14, 1948. School District No. 1 was not divested of title to its property until the order of consolidation was made. The mere filing of a petition for consolidation would not preclude a district school board when duly authorized from selling or otherwise disposing of property of the district in order properly to function. It does not follow, however, that a school district pending consolidation proceedings would have the right to liquidate its indebtedness by disposing of assets at the expense of another district. If this were permitted to be done, § 111-836, O. C. L. A., as amended, would be nullified.

■ Plaintiff School District on its cross appeal seeks damages for the wrongful detention of the bus. The circuit court, after a consideration of the evidence relative to this phase of the case, decided that it would be inequitable to assess damages against the defendants and in this conclusion we concur.

The decree of the circuit court is affirmed. Plaintiff is entitled to costs and disbursements.

ON PETITIONS FOR REHEARING

BELT, J.

■■ Both parties in this cause, which involved the right of ownership and possession of a school bus, have petitioned for a rehearing. The appellants assert that the decision of this court has put such a restriction on a school district from selling or disposing of its property, if a petition for consolidation has been filed, that it will be unable to function. We think the opinion is not reasonably susceptible to such an interpretation. We stated: ''The mere filing of a petition for consolidation would not preclude a district school

board when duly authorized from selling or otherwise disposing of property of the district in order properly to function." We adhere to our conclusion that the officers of School District No. 1 were undertaking, in circumvention of the statute (§ 111-836, O. C. L. A., as amended) to liquidate the indebtedness of the District pending consolidation proceedings. This it had no right to do.

■ Respondent-cross appellant urges that the court erred in not awarding damages to it for the wrongful detention of the bus pending the appeal to this court. We are asked to enter judgment against the defendants and their sureties on the supersedeas bond for the damages sustained. We have no authority to do this in this kind of proceeding. It is not an appeal from a money judgment. Authorities cited by cross appellant involve independent actions on the supersedeas bond itself and are not in point. This cause was tried in equity. We approved the finding of the circuit court that no damages for wrongful detention of the bus should be awarded, and we adhere to that conclusion.

The petitions for rehearing will be denied.